IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JASON W.<br><br>               Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,<br><br>               Defendant. | CV 19-84-M-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATION OF UNITED<br>STATES MAGISTRATE JUDGE |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant") on his applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq. (Doc. 2.) On August 9, 2019, Defendant filed the Administrative Record. (Doc. 8.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 14.) The motion is fully briefed and ripe for the Court's review. (Docs. 14, 18, 19.)

For the reasons set forth herein, and after careful consideration of the record

1

and the applicable law, the Court recommends that the Commissioner's decision

should be **REVERSED** and this matter be **REMANDED** for further proceedings.

## I.     Procedural Background

Plaintiff protectively filed applications for Title II disability insurance

benefits and Title XVI supplemental security income in September and October

2016, alleging disability since March 1, 2015. (Doc. 8, at 181-204). Plaintiff later

amended his onset date to September 6, 2016. (Doc. 8, at 38.)

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ

after an administrative hearing. (Doc. 8, at 112-15, 122-24 & 14-33). Plaintiff

requested review of the decision, and on March 14, 2019, the Appeals Council

denied Plaintiff's request for review. (Doc. 8, at 5-10.) Thereafter, Plaintiff filed

the instant action.

## II.    Legal Standards

### A.     Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity,

allowing for judicial review of social security benefit determinations after a final

decision of the Commissioner made after a hearing. *See Treichler v. Commissioner*

*of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or

is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial

gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

The Commissioner assesses disability through a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and

4

416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still perform on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in

the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018. The ALJ further found that Plaintiff had not engaged in substantial gainful activity after the amended alleged onset date of September 6, 2016. (Doc. 8, at 19.)

At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, anxiety, methamphetamine dependence (in remission), and degenerative disc disease. (Doc. 8, at 20.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 8, at 20.)

At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant is limited to lifting, carrying, pushing, pulling up to 25 pounds occasionally and 20 pounds frequently. The claimant is limited to standing or walking up to 6 hours in an 8-hour workday. The claimant is limited to sitting up to 6 hours in an 8-hour work day. The claimant is limited to occasionally climbing ladders, ropes or scaffolds. The claimant is

6

limited to frequently climbing ramps or stairs. The claimant is limited to
frequently balancing, stooping, kneeling, crouching and crawling. The
claimant must avoid all exposure to unprotected heights, moving mechanical
parts and all other workplace hazards. The claimant must have no more than
occasional exposure to extreme cold, vibrations or work on rough or uneven
surfaces. The claimant is limited to low stress work, defined as
understanding, remembering and carrying out only simple, routine tasks in a
job not requiring not more than simple work related decisions and not more
than occasional changes in the routine work setting as well as job duties. The
claimant is limited to not having a high production rate or pace work as
expected in an assembly line, but the claimant can fill a quota as long as they
can control the pace of that work. The claimant is limited to brief and
superficial contact with coworkers, there can be no jobs requiring tandem
job tasks or cooperation with coworkers for task completion. The claimant is
limited to an isolated work environment, defined as having not more than
five coworkers in the work area. The claimant is limited to brief, superficial
and incidental contact with the public. The claimant is limited to
occasionally accepting instruction and criticism from supervisors.

(Doc. 8, at 22.)

Based on this residual functional capacity, the ALJ found that Plaintiff could

not perform his past relevant work as a fast food worker and furniture-mover

driver. (Doc. 8, at 25-26.) Proceeding to step five, the ALJ found based on the

vocational expert's testimony that there were other jobs existing in significant

numbers in the national economy that Plaintiff could have performed. (Doc. 8, at

26.) Thus, the ALJ found that Plaintiff was not disabled. (Doc. 8, at 27.)

Plaintiff argues the ALJ erred in the following ways: (1) improperly

discounting the medical opinion evidence by Dr. Islam-Zwart and Ms. Lopuch; (2)

failing to issue an RFC finding that accurately reflects the ALJ's own findings

regarding the severity of Plaintiff's mental impairments; and (3) failing to properly credit Plaintiff's testimony. (Doc. 14.) The Court addresses each argument in turn.

### A.    Medical Opinion Evidence

The administrative record contains several medical opinions and records that are relevant to Plaintiff's physical and mental functioning during his alleged period of disability. Plaintiff does not challenge the ALJ's evaluation of each medical source opinion. Instead, he argues the ALJ erred in evaluating Dr. Islam-Zwart's medical source opinion regarding his mental impairments and functional abilities. (Doc. 14.) The Commissioner counters that the ALJ reasonably evaluated Dr. Islam-Zwart's opinion.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830. To discount the

controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As set forth below, the administrative record in this case contains conflicting opinions from treating and non-examining sources regarding Plaintiff's functioning during the relevant period. Given these conflicting opinions, the ALJ was required to give specific and legitimate reasons for discrediting one opinion in favor of another.

### 1.   Kayleen Islam-Zwart, Ph.D.

Plaintiff argues the ALJ failed to accord appropriate weight to Dr. Islam-Zwart's opinions concerning Plaintiff's mental impairments. (Doc. 14, at 7.) Dr. Islam-Zwart conducted a psychological consultative examination of Plaintiff on May 2, 2017. (Doc. 8, at 340-61.) In her examination, Dr. Islam-Zwart diagnosed Plaintiff with Antisocial Personality Disorder, Amphetamine Use Disorder, Unspecified Attention Deficit Hyperactivity Disorder, and Unspecified Trauma-Related Disorder. (Doc. 8, at 341.) She also evaluated Plaintiff's ability to sustain

activity over a normal workday and workweek for 13 separate categories of basic work activities. (Doc. 8, at 341.) She opined that Plaintiff had "Mild" limitations in one category, "Moderate" limitations in eight categories, and "Marked" limitations in four categories. (Doc. 8, at 341.) Dr. Islam-Zwart also opined that Plaintiff's overall degree of severity based on the combined impact of all diagnosed mental impairments was "Marked." (Doc. 8, at 341.) "Marked" is defined as a very significant limitation on the ability to perform one or more basic work activities. (Doc. 8, at 341.)

Dr. Islam-Zwart also issued a Confidential Supplement Report. In that report, she reviewed Plaintiff's psychiatric, medical, substance abuse, legal, and vocational histories. (Doc. 8, at 344-47.) She also reviewed Plaintiff's daily activities and conducted mental status tests. (Doc. 8, at 346-47.) In summarizing her examination, Dr. Islam-Zwart opined that Plaintiff was "uninhibited and irritable." (Doc. 8, at 348.) She also opined that Plaintiff presented "indications of mood disturbance, ADHD, anxiety, and PTSD . . . [and Plaintiff's] presentation is such that he is unable to work at this time and his prognosis for the future is poor." (Doc. 8, at 348.) Finally, Dr. Islam-Zwart stated that "it is imperative [Plaintiff] continues to remain abstinent from substances . . . referral for SSI is warranted . . . [and] [a] protective payee is also necessary." (Doc. 8, at 348.)

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Islam-Zwart's opinions. Plaintiff maintains that the ALJ's reasons for rejecting Dr. Islam-Zwart's opinions were overly generalized and vague. In support of his argument, Plaintiff asserts that the ALJ failed to cite to and address the specific findings in Dr. Islam-Zwart's opinion which she found unreliable.

a.   *Specific and Legitimate Reasons*

The administrative record contains conflicting opinions from examining and non-examining sources regarding Plaintiff's functioning during the relevant period. (Doc. 8, at 340, 68-74, 88-99.) The ALJ was therefore only required to provide specific and legitimate reasons for discounting Dr. Islam-Zwart's opinion. The ALJ considered Dr. Islam-Zwart's opinion but gave it limited weight because she determined that Dr. Islam-Zwart's opinion was "inconsistent with the claimant's activities of daily living . . . [was] based off of a one-time examination . . . [and was] inconsistent with the objective medical evidence." (Doc. 8, at 25.)

In support of her findings, the ALJ cited a treatment note from a doctor's visit in April of 2018 concerning Plaintiff's back pain. (Doc. 8, at 744.) The treatment note stated that Plaintiff's back pain had become worse from "picking up a lot of branches" as part of a day labor job. (Doc. 8, at 744.) The ALJ also cited a mental health treatment note from April of 2018 where the Plaintiff reported

"picking up tree branches part-time as needed getting a couple of hours." (Doc. 8, at 830.) Finally, the ALJ referred generally to her discussion of the objective medical evidence in support of her finding that Dr. Islam-Zwart's opinion was inconsistent with that evidence. (Doc. 8, at 25.)

The ALJ failed to provide "specific and legitimate" reasons for discounting Dr. Islam-Zwart's opinion. Although the ALJ cited an instance where the Plaintiff performed a day labor job picking up branches, she did not explain how that activity was inconsistent with Dr. Islam-Zwart's opinion, or why the perceived inconsistency is a legitimate reason to discount Dr. Islam-Zwart's opinion. The ALJ wholly failed to establish a nexus between an isolated incident of day labor and Dr. Islam-Zwart's assessment. The ALJ's analysis falls short of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

The ALJ's reasoning that Dr. Islam-Zwart's opinion was "inconsistent with the objective medical evidence" also fails to sufficiently contradict the opinion. (Doc. 8, at 25.) First, the ALJ's characterization of the medical evidence is vague and conclusory. The ALJ characterized Dr. Islam-Zwart's opinion as "inconsistent" without specifically identifying what evidence in the record it was

inconsistent with and why. "The ALJ must do more than offer [her] conclusions. [S]he must set forth [her] own interpretations and explain why they, rather than the doctors' are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ' dismissal of the opinion simply as "inconsistent" fails to reach the level of specificity required by the Ninth Circuit.

Second, a review of the record demonstrates, as the ALJ acknowledges in a separate portion of her decision, "[m]ost mental status examinations found the claimant to have an anxious mood and affect with impaired concentration[.]" (Doc. 8, at 23.) Additionally, the medical records the ALJ generally refers to in support of her determination that the Plaintiff has "an adequate mood and affect . . . logical thought process, adequate judgment, adequate insight and intact memory" are largely unsupportive. (Doc. 8, at 23.) For example, the ALJ cites various treatment notes from Plaintiff's visits to physicians for back, dental, and leg pain to support her finding that his mental health was "appropriate." (Doc. 8, at 745, 753, 759, 763, 767, 784, 788.) The language the ALJ relies on in the treatment notes is reoccurring boilerplate with no relation to the reason for Plaintiff's visit. Additionally, nothing in the treatment notes indicates Plaintiff's mental health or impairments were even discussed at these visits.

The record also includes a New Client Psychiatric Evaluation concerning

14

Plaintiff's mental status. (Doc. 8, at 809.) The ALJ cited the evaluation in the portion of her decision discussing the medical evidence. (Doc. 8, at 24.) The evaluation includes a cognitive screen, narrative, diagnosis, and treatment recommendations. (Doc. 8, at 809-813.) The evaluation indicates the Plaintiff did not make any errors during his cognitive screen and had a "full" affect, but the clinician also found Plaintiff to be guarded and referred him for therapy to address his past trauma and coping skills. (Doc. 8, at 809-813.) The ALJ, however, failed to discuss any of these findings. To the extent the ALJ seeks to rely on the evaluation to discredit Dr. Islam-Zwart's opinion, her general citation to the record is insufficient.

The ALJ's brevity in dismissing Dr. Islam-Zwart's opinion as "inconsistent with the claimant's activities of daily living . . . based off of a one-time examination . . . [and] inconsistent with the objective medical evidence" fails to provide sufficient detail to support her decision to discredit the opinion. (Doc. 8, at 25.) The Court therefore cannot find the ALJ properly weighed Dr. Islam-Zwart's opinion or specifically identified a 'legitimate' reason to reject it. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (an ALJ errs when she assigns little weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing

it with boilerplate language[.]").

### B.     Other Source Evidence

Plaintiff next argues the ALJ erred in evaluating the opinion of Bre Lopuch, the program administrator and therapist at Winds of Change, a mental health treatment facility.

Program administrators and therapists are considered "other sources" under the regulations. 20 C.F.R. § 404.1502; SSR 06-03p. Other sources cannot give medical opinions and "cannot establish the existence of a medically determinable impairment" but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. SSR 06-03p. See also 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). The opinion evidence from "other sources" should be evaluated pursuant to such factors as how long the source has known the claimant, how long the source has seen the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. SSR 06-03p. While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" is not entitled to the same deference and may be discounted if the ALJ provides

germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

The ALJ afforded limited weight to Ms. Lopuch's opinion because it was "inconsistent with the objective medical record and not supported by the objective medical evidence as summarized in discussing the opinion of the State agency mental determination[.]" (Doc. 8, at 25.) The ALJ also discredited the opinion because Ms. Lopuch did not conduct a mental status examination to support the restrictive limitations articulated in her opinion. (Doc. 8, at 25.) The ALJ therefore found Ms. Lopuch's opinion was not supported by her own findings. (Doc. 8, at 25.)

In October 2018, Ms. Lopuch completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form on which she indicated that Plaintiff had marked and extreme restrictions in performing work-related mental activities. (Doc. 8, at 873.) Ms. Lopuch explained that her opinion was based on Plaintiff's diagnoses and symptoms. (Doc. 8, at 873-74.) She stated that Plaintiff is "largely unable to focus" and "does not respond appropriately to social cues[.]" (Doc. 8, at 874.) She further stated that Plaintiff "becomes aggressive and combative in situations where he feels threatened which includes any situation where someone is using authority or constructive criticism." (Doc. 8, at 874.)

17

The ALJ considered the factors set forth in SSR 06-03p and provided germane reasons for affording limited weight to Ms. Lopuch's opinion. The ALJ noted that Ms. Lopuch's findings conflicted with the opinion of the State agency mental determination, which found aspects of Plaintiff's mental functioning to be "moderate" rather than "marked" or "extreme." (Doc. 8, at 25.) The ALJ also discredited Ms. Lopuch's opinion because it was not supported by a mental status examination. (Doc. 8, at 25.) Consistent with the ALJ's reasoning, the State agency mental determination reflects more moderate findings based on consideration of the medical evidence in the record. (Doc. 8, at 65-75, 88-110.) Additionally, there is no indication that Ms. Lopuch performed objective testing in the form of a mental status examination to support her opinion. Rather, Ms. Lopuch's findings are supported by Plaintiff's diagnoses and subjective complaints. (Doc. 8, at 873-74.) The ALJ reasonably discounted the marked and extreme limitations identified by Ms. Lopuch for the germane reasons that they were inconsistent with the State agency evidence and were unsupported by objective testing or other relevant evidence.

**C.     The RFC Finding**

Plaintiff argues the ALJ failed to issue an RFC finding that accurately reflects the ALJ's own findings regarding the severity of Plaintiff's mental

impairments. Specifically, Plaintiff contends that the ALJ failed to accurately translate her mental functioning findings, also referred to as "paragraph B" findings, into accurate RFC findings. (Doc. 14, at 21.)

Pursuant to Social Security Ruling (SSR) 96-8p, non-exertional limitations derived from severe and non-severe impairments must be considered in assessing RFC. However, the Ninth Circuit has determined that an ALJ's findings at steps two and three need not "correspond to the limitations on a claimant's ability to perform basic work activities." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). Additionally, "limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" [] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3[.]" SSR 96-8p. The mental impairment assessment used at steps 4 and 5 "requires a more detailed assessment [than at steps two and three] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." *Carver v. Colvin*, 600 Fed.Appx. 616, 621 (10th Cir. 2015).

As required, the ALJ identified and rated the paragraph B criteria assessing degree of impairment in four areas of functioning. (Doc. 8, at 20.) The ALJ found that Plaintiff had marked limitations in the area of interacting with others and

moderate limitations in the areas of understanding, remembering, or applying information, the ability to concentrate, persist, or maintain pace, and the ability to adapt or manage himself. (Doc. 8, at 21.) In determining the Plaintiff had marked limitations interacting with others, the ALJ considered the Plaintiff's statements that he has mood swings and anger issues. (Doc. 8, at 21.) The ALJ also considered medical notes describing Plaintiff as pleasant, as well as the Plaintiff's ability to shop, take public transportation, live with others, and interact with acquaintances. (Doc. 8, at 21.)

Plaintiff argues the ALJ erred by issuing an RFC limiting Plaintiff to "brief and superficial contact" with the public and coworkers, while only limiting Plaintiff to "occasionally accepting instruction and criticism from supervisors." (Doc. 12 at 22.) Plaintiff argues this discrepancy does not accurately reflect the ALJ's paragraph B finding that Plaintiff has marked limitations in interacting with others. (Doc. 12 at 22.) Plaintiff maintains it was unreasonable for the ALJ to find he had a greater capacity to accept feedback from supervisors than to interact with the public and coworkers.

The ALJ's RFC finding properly accounted for Plaintiff's limitations in interacting with others. The RFC limited Plaintiff's contact with others by (1) limiting Plaintiff to brief and superficial contact with coworkers; (2) limiting

Plaintiff to jobs that do not require tandem job tasks or cooperation with coworkers for task completion; (3) limiting Plaintiff to an isolated work environment with no more than five coworkers in the work area; (4) limiting Plaintiff to brief, superficial, and incidental contact with the public; and (5) limiting Plaintiff to occasionally accepting instruction and criticism from supervisors. (Doc. 8, at 22.) It is clear the ALJ accommodated Plaintiff's limitations in interacting with others by restricting his work environment and job duties.

The ALJ's decision to limit Plaintiff's contact with coworkers and the public to a different degree than she chose to limit Plaintiff's ability to accept instruction and criticism from supervisors falls squarely within the ALJ's authority. "It is the responsibility of the ALJ . . . to determine residual functional capacity. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ is tasked with resolving conflicts and ambiguities in the evidence, and the Court may not substitute its judgment for that of the Commissioner when "the evidence is susceptible to more than one rational interpretation." *Edlund*, 253 F.3d at 1156. The Court finds the ALJ adequately incorporated restrictions into the RFC to account for the effects of Plaintiff's paragraph B limitations.

/ / /

/ / /

21

**D.     The ALJ's Credibility Determination**

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to provide sufficiently clear and convincing reasons for discounting his subjective testimony as to the severity of his mental limitations.   (Doc. 14, at 26; Doc. 19, at 11-15.)

The credibility of a claimant's subjective symptom testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. If the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Vasquez*, 572 F.3d at 591.

Here, the first step of the credibility analysis is not in issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, and there is no argument the Plaintiff is malingering. (Doc. 8, at 23.) Therefore, the ALJ was

22

required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms.

At the hearing, Plaintiff testified that he was unable to perform the duties associated with his past employment because of his mental and physical impairments. As to his symptoms, Plaintiff explained that he cannot work due to his mental stress and physical pain. (Doc. 8, 43-44.) He testified that his back pain increases if he sits, lays, or stands for too long. (Doc. 8, at 44.) Plaintiff further explained that he experiences pain throughout his back on a regular basis with no relief. (Doc. 8, at 45-46.) He testified that he cannot handle being around other people or sitting still. (Doc. 8, at 43.) Plaintiff testified that he has low energy, problems understanding information and instructions, does not get along with other people, often gets into fights, and suffers from anxiety and irritability. (Doc. 8, at 45-49.) He stated his anxiety is triggered when people stand behind him. (Doc. 8, at 50.) He additionally testified that he becomes dizzy and faint when he is in a large group of people. (Doc. 8, at 50.) Plaintiff also explained that his PTSD and depression cause him to be anxious, nervous, hopeless, and unmotivated. (Doc. 8, at 50-52.) He further testified that he has memory problems, does not respond well to criticism, and cannot have brief contact with others when he is having a bad day. (Doc. 8, at 53-55.)

23

Plaintiff testified as to the treatment he has received for his physical ailments. He explained that he has seen a physical therapist and takes medicine for his pain. (Doc. 8, at 46.) He stated that he experiences no relief from treatment. (Doc. 8, at 46.) Plaintiff also testified that if he walks a "half mile and back" he is unable to walk for the rest of the day. (Doc. 8, at 47.) He further stated that he can stand for one-hour and can sit for about 30 minutes. (Doc. 8, at 48.) He can also carry about 20 pounds. (Doc. 8, at 48.)

As to his cognitive impairments, Plaintiff explained that he has problems staying focused and being around others. (Doc. 8, at 49.) He stated he goes to mental health counseling, but often misses his appointments or leaves early because he does not want to talk about anything or is uncomfortable in rooms with closed doors. (Doc. 8, at 51.) He also stated that he only stays at appointments for as long as he wants to be in the room. (Doc. 8, at 51.) Plaintiff also testified that he takes Adderall, which helps him "to a point." (Doc. 8, at 49.)

The ALJ discounted Plaintiff's testimony as to the severity of his symptoms because she found that although limitations exist due to Plaintiff's impairments, the limitations are not disabling. (Doc. 8, at 23.) The reasons provided by the ALJ are insufficient to sustain her rejection of Plaintiff's subjective testimony.

The ALJ found that Plaintiff's alleged functional level was not credible

because it was inconsistent with the medical records and his daily activities. In particular, the ALJ noted that "[m]ost mental status examinations found the claimant to have an anxious mood and affect with impaired concentration as well as one mental status examination finding the claimant to have a poor attention span." (Doc. 8, at 23.) Nevertheless, the ALJ identified "some mental examinations" which found Plaintiff had "an adequate mood and affect" and "a majority of mental status examinations found the claimant to have a logical thought process, adequate judgment, adequate insight and intact memory." (Doc. 8, at 23.) As discussed above, however, most of the treatment notes the ALJ cites in support of her findings are not from Plaintiff's appointments for mental health treatment. Rather, they are from Plaintiff's appointments for complaints of back, dental, and leg pain. (Doc. 8, at 745, 753, 759, 763, 767, 784, 788.) The treatment notes do not indicate Plaintiff's mental health was even discussed at the visits. Most importantly, however, the ALJ did not explain what specific testimony the medical records contradicted, or how they undermined Plaintiff's credibility.

The ALJ also found Plaintiff's testimony not credible based on evidence of his daily activities. (Doc. 8, at 24.) In particular, the ALJ pointed to evidence that Plaintiff "was able to pay bills, take public transportation to get around, interact with 'acquaintances' at the homeless shelter, perform household chores, shop in

stores, attend medical appointments, attend mental health counseling appointments and get around by using a bicycle[.]" (Doc. 8, at 24.) None of these activities are inconsistent with Plaintiff's testimony. Plaintiff testified that he was able to do these activities within limits and on a restricted basis. (Doc. 8, at 46-55.) "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722. For these reasons, the Court concludes that the ALJ's credibility finding is not properly supported by specific, clear and convincing reasons.

### E.    Remand

The errors discussed above require that this case be remanded. Plaintiff requests the Court remand this matter for an award of benefits, or in the alternative, for further administrative proceedings. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ

should reevaluate Dr. Islam-Zwart's opinion and the Plaintiff's testimony. The ALJ should clarify what, if any, additional limitations are incorporated into the RFC assessment to account for Plaintiff's mental impairments. In addition, the Court acknowledges that the ALJ is in the best position to evaluate the medical evidence. Providing the ALJ with the opportunity to reevaluate the Dr. Islam-Zwart's opinion and Plaintiff's testimony on remand will remedy the identified defects in the original administrative proceedings.

## IV.   <u>Conclusion</u>

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED** and the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits be **REVERSED**. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or

27

objection is waived.

DATED this 18th day of February, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge